AO 106 (Rev. 06/09) Application for a Search Warrant



FILED

MAR 08 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

HTC Desire 820G PLUS dual sim cellular telephone
Serial Number: 5927619, IMEI: 352293070663773

Case No. **18MJ1091**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incorporated by reference.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 and 963 | Importation of controlled substances and conspiracy to do the same |

The application is based on these facts:
See Affidavit of Special Agent Bonnie Myers, which is hereby incorporated by reference and made part hereof.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Bonnie Myers, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3-8-2018

_____
*Judge's signature*

City and state: San Diego, California    Hon. Nita L. Stormes, Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT APPLICATION

I, Bonnie Myers, Special Agent of the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following electronic device, as further described in Attachment A, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Section(s) 952, 960, and 963, as more particularly described in Attachment B:

> HTC cellular telephone
> Model: HTC Desire 820G PLUS dual sim
> Serial Number: 5927619
> IMEI: 352293070663773
> **(Target Device)**

This search supports an investigation and prosecution of William Frank KALISH (KALISH) for the crimes mentioned above. A factual explanation supporting probable cause follows.

2. The **Target Device** was seized from KALISH by Customs and Border Protection Officers on September 23, 2017, when he was arrested at the Otay Mesa, California, Port of Entry (POE), attempting to smuggle methamphetamine into the United States. The **Target Device** was then turned over to HSI, who assumed custody of the Target Device. During KALISH'S post-arrest interview, KALISH acknowledged that the **Target Device** belonged to him. The **Target Device** is currently held as evidence with Homeland Security Investigations, Special Agent in Charge, located at 880 Front Street, Suite 3200, San Diego, California 92101.

3. As set forth in more detail below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents.

Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5. I am a Special Agent for the Department of Homeland Security, Homeland Security Investigations, and have been so employed since January 2010. I am a graduate of the Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training program at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. At FLETC, I was trained in, among other things, criminal investigative techniques.

6. I am cross-designated by the United States Drug Enforcement Administration to conduct narcotics investigations and to enforce provisions of the Federal Controlled Substance Act, pursuant to Title 21 of the United States Code. I have participated in criminal investigations involving, among other things, the illegal smuggling of narcotics into the United States, and I have received formal training in the laws and regulations relating to such investigations including 21 USC 952 and 960, Importation of a Controlled Substance. My training has also included the use of cellular and digital telephones and other electronic devices used by narcotics smugglers in the normal course of their illicit activities.

7. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Drug smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

   b. Drug smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

2

c. Drug smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d. Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e. Drug smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f. Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

g. The use of cellular telephones by conspirators or drug smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

8. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

9. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This

3

information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

    a. tending to indicate efforts to import methamphetamine, or some other federally controlled substances from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

    e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On September 23, 2017, at approximately 4:37 a.m., KALISH attempted to enter the United States from the Republic of Mexico via the vehicle lanes at the Otay Mesa, California POE. At the time of entry, KALISH was the driver and sole occupant of a 2012 Ford Fusion bearing California license plates. The U.S. Customs and Border Protection Officer (CBPO) asked KALISH if he had anything to declare and KALISH stated "nothing." He told the CBPO that he worked for a construction company and has owned the vehicle for two weeks since he started the job. The CBPO asked him if he was

4

responsible for everything in the vehicle and he replied, "yes, I am driving it." While conducting a pre-primary inspection, the CBPO noticed that the gas tank sounded abnormal and solid when tapped. The CBPO also noticed that the spare tire sounded solid when tapped. The CBPO utilized his assigned density reader K910B Buster and obtained high readings on the spare tire. KALISH and the vehicle were referred to the secondary lot for further inspection.

12. While in the vehicle secondary lot, a CBPO assigned to the Z-Portal screened the vehicle and saw anomalies in the spare tire of the vehicle.

13. An inspection of the vehicle by a CBPO in the vehicle secondary lot resulted in the discovery of 6 packages concealed within the spare tire and 32 packages within the gas tank that tested positive for properties of methamphetamine. The total weight of the 38 packages of methamphetamine was approximately 22.18 kilograms (48.90 pounds). CBPO A. Lun placed KALISH under arrest for importation of controlled substances into the United States, and placed him in a holding cell. CBPO M. Martinez seized the methamphetamine and the vehicle. He also seized the personal property of KALISH that was in his possession at the time of his arrest, including the **Target Device**.

14. Your affiant responded to the POE to investigate the incident. KALISH was read his *Miranda* rights and agreed to make a statement. He stated that approximately two weeks prior, he had answered an advertisement in "La Frontera" for construction work as a driver, for a company called "Gonzalez Construction." He stated that he had been told to drive a vehicle (the same vehicle in which he was arrested) across the border, and was then told that the work was cancelled and to drive back. He claimed that he was called once or twice a week to drive the vehicle across the border to pick up workers to take to a job site, and that each time he was instructed to park at the McDonalds near the border and wait. According to KALISH, each time he did, he was told that there was no work and to leave the vehicle parked (usually at the Tellos parking lot) and walk back across the border. KALISH stated that this happened about four times. He stated that he was paid about $50

each time.

15. KALISH further claimed that the only person he has met associated with the company is an individual named Cesar Armando, whose phone number is in his cell phone. He stated that when he crossed, he would call another engineer, named Carlos Lomeli, whose number is also saved in his cell phone. KALISH was transported to the San Diego Metropolitan Correctional Center ("MCC") for federal custody and judicial proceedings.

16. An initial border search of the **Target Device** was conducted using a Cellebrite machine at the time of KALISH's arrest. No information obtained from that search has been relied on for purposes of this search warrant.

17. Based upon my experience investigating narcotics traffickers and the particular investigation in this case, I believe that the **Target Device** was used to coordinate the importation of methamphetamine into the United States. In addition, I know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device** may identify the persons involved in narcotics trafficking activities, including KALISH. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of KALISH, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**.

18. Finally, I also know that narcotics trafficking activities entail intricate planning to successfully evade detection by law enforcement. In my professional experience, this requires planning and coordination in the weeks and often months prior to the event. This planning often includes coordination on crossing the border to develop a crossing history or pattern. A review of KALISH'S crossing records shows frequent

6

1 crossings in the vehicle he used to conceal the methamphetamine. Records show he started
2 using the vehicle to cross on or about August 25, 2017, and regularly used it to cross to and
3 from Mexico up through his arrest. As noted above, the methamphetamine was concealed
4 within the spare tire and gas tank. Given this, I respectfully request permission to search
5 the **Target Device** for items listed in Attachment B beginning on August 1, 2017, up to
6 and including September 23, 2017.

## METHODOLOGY

19. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect the subject cellular/mobile telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

22. Based on all of the facts and circumstances described above, there is probable cause to conclude that the **Target Device** was used to facilitate violations of Title 21, United States Code, Section(s) 952 and 960.

23. Because the **Target Device** was seized during the investigation of KALISH's smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by KALISH continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from August 1, 2017, up to and including September 23, 2017.

//
//
//
//
//
//
//
//
//
//

8

24. **WHEREFORE**, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the **Target Device**, as described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Bonnie Myers
Homeland Security Investigations

Subscribed and sworn to before me this __8th__ day of March, 2018.

The Honorable Nita L. Stormes
United States Magistrate Judge

9

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

>HTC cellular telephone
>Model: HTC Desire 820G PLUS dual sim
>Serial Number: 5927619
>IMEI: 352293070663773
>**(Target Device)**



**Target Device** is currently in the possession of the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, Special Agent in Charge, located at 880 Front Street, Suite 3200, San Diego, California 92101.

## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of August 1, 2017, through September 23, 2017.

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.